635 A.2d 128

**In re KING PROPERTIES: all that Certain Tract of Land Situate in the Borough of Gettysburg, County of Adams, and State of Pennsylvania Known as 129 West Street, Gettysburg, Adams County as Described with Particularity in Deed Book 504, Pages 251–252, Recorder of Deeds Office, Adams County, Pennsylvania along with all of its Improvements, Appurtenances, Buildings and Structures.**

**Appeal of Coy KING, Claimant of King Properties.**

Supreme Court of Pennsylvania.

Submitted July 20, 1993.

Decided Dec. 15, 1993.

Gary Lysaght, Harrisburg, for appellant.

Andrea F. McKenna, Sr. Deputy Atty. Gen., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The substantive issue in this case is whether there is a right of redemption under Article I, Section 13 of the Constitution of Pennsylvania[1] requiring that owners of real property forfeited under the Pennsylvania Controlled Substances Forfeitures Act be allowed to redeem their property in order to ensure that the forfeiture is proportionate to the drug offense which has been committed.

On January 7, 1989 police searched King's house pursuant to a search warrant. When the warrant was executed, King was present and $4,395.00 in cash was found on a bed. In the same area, police found a supply of plastic baggies, twist ties, scissors and white powder residue. Throughout the house,

---

1. Article I, Section 13 provides:
   Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted.

there were plastic bags with the corners cut, items commonly used in the drug trade. Near the stairs, there were plastic bags containing plastic baggies. In a closet under the stairs was another bag containing white residue, and an O'Haus triple beam scale, which is often used in drug trafficking. In the garage, in the trunk of King's Lincoln Continental, there was $7,850.00 in cash. In the kitchen, police found 12 to 14 grams of cocaine.

King admitted that he was the owner and only resident of the house. Although King claimed that he was a laid-off blacktopping worker, he made a cash payment of $46,365.95 toward the purchase price of his house on October 14, 1988. He also made cash purchases of $6,412.66 for furniture. Additionally, as indicated above, he had $7,850.00 cash in his Lincoln Continental, $4,395.00 cash in his bedroom, and more than $1,250.00 worth of cocaine in the kitchen of his house.

On July 15, 1989, while King was out on bail, police executed a second search warrant for his house. Again, officers found King at the residence with $805.00 in cash, powder residue on a plate, other drug paraphernalia in an upstairs bedroom, and more plastic bags with corners cut off in the kitchen.

On November 2, 1989, King pled guilty to possession with intent to deliver, which, because of the volume of cocaine involved, carried a mandatory three year minimum sentence.

On October 17, 1989, the Commonwealth filed a petition for forfeiture of King's house under the Controlled Substances Forfeitures Act, 42 Pa.C.S. § 6801(a)(6)(i)(C), which requires forfeiture of real property used or intended to be used to facilitate violations of the Drug Act.[2] After hearing, the trial court found that King's entire interest in the house was forfeit, but granted King the right to redeem the house for $30,000. The Commonwealth appealed and Commonwealth Court affirmed the determination of forfeiture, but reversed the trial court's order allowing for redemption of the forfeit property,

---

**2.** A second petition for forfeiture of certain of King's personal property went unopposed and forfeiture of this property was granted.

holding that the trial court was without authority to allow King to redeem the property.

We granted allocatur in order to address King's constitutional claim that the right of redemption is required in order to insure that the forfeiture is proportionate to the severity of the offense on which it is based.

Section 6801 of the Controlled Substances Forfeitures Act provides in pertinent part:

> **(a) Forfeitures generally.** The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:
>
> (6)(i) All of the following:
>
> \*  \*  \*  \*  \*  \*
>
> (C) Real property used or intended to be used to facilitate any violation of the Controlled Substance, Drug, Device and Cosmetic Act, including structures or other improvements thereon, ... which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of The Controlled Substance, Drug, Device and Cosmetic Act....

42 Pa.C.S. § 6801(a)(6)(i)(C).

Noting that substantial sums of cash were found in and around King's real estate and that King paid $43,365.95 cash for his house, the trial court observed that it was "highly improbable that Defendant could have accumulated the large sums of money by legitimate means." The court also stated that it was "highly unlikely that the drug paraphernalia and cocaine was possessed for personal use," and that "the amount of cash indicate[d] a considerable operation." Relying on "ancient principles of equity of redemption," however, the trial court ordered that King could redeem his interest in the real property by paying $30,000 to the Commonwealth.

Commonwealth Court reversed, holding that it was improper to fashion an equitable remedy where the legislature has provided a mandatory and exclusive statutory remedy. This remedy, as noted by Commonwealth Court, is that under

Section 6802(j) of the Forfeiture Act,[3] the property owner may present evidence at the forfeiture hearing that the property was not unlawfully used or possessed or that the owner was either ignorant of such unlawful use or possession or never consented to it. Further, 42 Pa.C.S. § 6801(e)(2),[4] pertaining to the sale of forfeited property, does not prohibit King from purchasing the forfeited property if sold. Redemption, however, is not mentioned in the statute.

King's essential claim in this appeal is that whether or not redemption is mentioned in the statute, it is required by Article I, Section 13 of the Constitution of Pennsylvania, which prohibits excessive fines.[5]

3. 42 Pa.C.S. § 6802(j) provides:

(j) Owner's burden of proof.—At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a), the burden shall be upon the claimant to show:

(1) The claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.

(2) That the claimant lawfully acquired the property.

(3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

4. 42 Pa.C.S. § 6801(e)(2) provides, in pertinent part:

(e) Use of property held in custody.—Whenever property is forfeited under this chapter, the property shall be transferred to the custody of the district attorney, if the law enforcement authority seizing the property has local or county jurisdiction, or the Attorney General, if the law enforcement authority seizing the property has Statewide jurisdiction. The district attorney or the Attorney General, where appropriate, may:

\*　　\*　　\*　　\*　　\*　　\*

(2) Sell any forfeited property which is not required to be destroyed by law and which is not harmful to the public, but the proceeds from any such sale shall be used to pay all proper expenses of the proceedings for forfeiture and sale, including expenses of seizure, maintenance of custody, advertising and court costs.

5. King also contends that the Commonwealth's appeal was not timely and should have been either quashed or limited to the question of whether the redemption was in the appropriate amount.

The trial court's order of November 2, 1990 provided:

■ Article I, Section 13 of the Pennsylvania Constitution provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted.

The Eighth Amendment to the United States Constitution provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

In *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1983), this court determined that "the rights secured by the Pennsylvania prohibition against 'cruel punishments' are co-extensive with those secured by the Eighth and Fourteenth Amendments." 500 Pa. at 73–74, 454 A.2d at 967. This court has not determined that the "excessive fines" provision of Pennsylvania's Article I, Section 13 is governed by the federal treatment of the Eighth Amendment, but since the federal and

[D]efendant's interest in the real estate described in Commonwealth's petition is forfeited pursuant to law. Defendant may redeem his interest within forty-five (45) days of this Order by paying to the Commonwealth of Pennsylvania the sum of Thirty Thousand Dollars ($30,000.00). This sum is set without prejudice to the right of either party to request, within fifteen (15) days of this Order, an additional hearing to set the amount of money required to redeem defendant's interest.

The Commonwealth took no appeal from this order, believing it to be interlocutory, but the Commonwealth did make application to the lower court to certify the case for interlocutory appeal and to grant supersedeas. The lower court did not act on the Commonwealth's application, and a hearing was conducted on January 22, 1991, on the appropriateness of the November 2, 1990 order. On January 22, 1991, the trial court affirmed its earlier order that $30,000 was an appropriate redemption amount, and the Commonwealth took a timely appeal from this order.

The essence of King's claim is that the order of November 2, 1990 had a "final aspect" under Pa.R.A.P. 341, and should have been appealed if the Commonwealth disagreed with its terms. We disagree. The amount of the redemption was inextricably related to the redemption itself. If, for example, the court determined that the amount of redemption was the entire appraised value of the house, or what the Commonwealth was likely to have received at auction, presumably the Commonwealth would not have appealed because it would receive no less from King's redemption than it would at auction. But it could not know the trial court's final determination as to the amount of redemption until the January 22 hearing, after which it properly took its appeal raising the entire issue of redemption.

Commonwealth constitutional provisions are virtually identical, we must inquire as to the federal treatment, if any, of the "excessive fines" provision.[6]

Approximately one month before the present case was submitted to this court, the United States Supreme Court decided *Austin v. United States*, 509 U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), which held that the excessive fines provision of the Eighth Amendment applies to drug-related forfeitures of property to the United States under 21 U.S.C. § 881(a)(4) and 881(a)(7)[7] because such a forfeiture constitutes a payment to government as a punishment.[8] The court held

6. It is axiomatic that although we may grant our citizens more protections pursuant to the Pennsylvania Constitution than are provided under the comparable clauses of the United States Constitution, we may not provide fewer protections. As we stated in *Commonwealth v. Edmunds*, quoting New Jersey Supreme Court Justice Pollock:

"The first ten amendments (to the U.S. Constitution) establish a foundation for the protection of human liberty. A state may not undermine that foundation, but its constitution may build additional protections above the federal floor." Pollock, Adequate and Independent State Grounds as a Means of Balancing the Relationship Between State and Federal Courts, 63 Tex.L.Rev. 977, 980 (1985). 526 Pa. 374, 388, n. 5, 586 A.2d 887, 894, n. 5. As a threshold matter, then, we must examine the federal treatment of the Eighth Amendment's "excessive fines" provision in the context of forfeitures in order to determine the minimum protections which are required.

7. These statutes provide for the forfeiture of:

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale receipt, possession, or concealment of [controlled substances, their raw materials, and equipment used in their manufacture and distribution].

(7) All real property including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment. . . .

8. On June 13, 1990, Austin sold two grams of cocaine from his auto body shop. He apparently stored the drugs in his mobile home. The next day, police executed a search warrant of Austin's property, at which time they found a small amount of marijuana and cocaine, a .22 caliber revolver, drug paraphernalia, and approximately $4,700 in cash.

Austin was convicted of one count of possession of cocaine with intent to distribute and was sentenced by South Dakota courts to seven

that it was immaterial whether the forfeiture was civil or criminal. The significant inquiry is whether the forfeiture is punishment. After tracing the history of three different types of forfeitures in English law, the court concluded that statutory in rem forfeitures, which exist in this country as well as in England, impose punishment. 509 U.S. at ——, 113 S.Ct. at 2810, 125 L.Ed.2d at 503. The Court also concluded that the forfeiture statutes in question in this case provided an "innocent owner" defense,[9] indicating a congressional intent to punish only those involved in drug trafficking. The lower court erred, therefore, in concluding that the owner's guilt or innocence in an in rem proceeding against property is constitutionally irrelevant. To the contrary, the Court determined that the "the historical understanding of forfeiture as punishment" and "innocent owner" provisions of the statutes establish that this statutory forfeiture was intended as punishment, which is subject to the limits of the "excessive fines" provision of the Eighth Amendment. —— U.S. at ——, 113 S.Ct. at 2812, 125 L.Ed.2d at 505–6. Because the lower court erroneously decided that it was not permitted to consider the proportionality of the forfeiture to the crime, a majority of the *Austin* court remanded the case to the lower court to consider the factors to be used in determining proportionality.[10]

years imprisonment. The United States then filed an in rem action seeking forfeiture of Austin's mobile home and auto body shop under 21 U.S.C. §§ 881(a)(4) and (a)(7).

**9.** The "innocent owner" provisions are as follows:

No conveyance shall be forfeited under this paragraph to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge, consent, or willful blindness of the owner
21 U.S.C. § 881(a)(4)(C), and
[N]o property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner
21 U.S.C. § 881(a)(7).

**10.** Mr. Justice Scalia, concurring, agrees that the taking of lawful property in an in rem forfeiture is punishment, but does not agree that it is necessary to establish the culpability of property owners in order to demonstrate punitiveness. "[T]he statutory forfeiture must always be at

■ The lessons which we draw from this are that the forfeiture in the present case, which is based on a statute virtually identical to that in *Austin*, is punitive, and therefore, that Article I, Section 13 of the Constitution of Pennsylvania applies. We must, therefore, develop appropriate factors to

least 'partly punitive' or else it is not a fine." —— U.S. at ——, 113 S.Ct. at 2814, 125 L.Ed.2d at 507, n. *.

Mr. Justice Scalia agrees, however, that the statute involved in *Austin*, "in contrast to the traditional in rem forfeiture," requires that the owner be culpable and that the property must "offend" as well, which requires that the statutory forfeiture in this case be regarded as a payment as a punishment for an offense. —— U.S. at ——, 113 S.Ct. at 2814, 125 L.Ed.2d at 508.

Mr. Justice Scalia believes that on remand the only relevant inquiry is whether the confiscated property "has a close enough relationship to the offense" to justify forfeiture. —— U.S. at ——, 113 S.Ct. at 2815, 125 L.Ed.2d at 509. Value of the property, according to Justice Scalia, is irrelevant, unlike monetary fines or in personam forfeiture, where the concern is value of the fine in relation to the offense. Here, as Justice Scalia puts it:

> Scales used to measure out unlawful drug sales, for example, are confiscable whether made of the purest gold or the basest metal. But an in rem forfeiture goes beyond the traditional limits that the Eighth Amendment permits if it applies to property that cannot properly be regarded as an instrumentality of the offense—the building, for example, in which an isolated drug sale happens to occur. Such a confiscation would be an excessive fine. The question is not *how much* the confiscated property is worth, but *whether* the confiscated property has a close enough relationship to the offense.

*Id.* at ——, 113 S.Ct. at 2815, 125 L.Ed.2d at 509.

Putting it another way, Mr. Justice Scalia, concludes:

> The relevant inquiry for an excessive forfeiture under § 881 is the relationship of the property to the offense: Was it close enough to render the property, under traditional standards, "guilty" and hence forfeitable?

*Id.* at ——, 113 S.Ct. at 2815, 125 L.Ed.2d at 509. The "traditional standards" to which Mr. Justice Scalia refers are illustrated by his reference to the common-law example of deodands, in which:

> if a man was killed by a moving cart, the cart and its horses were deodands [forfeit], but if the man died when he fell from a wheel of an immobile cart, only the wheel was treated as a deodand, since only the wheel could be regarded as the cause of death.

*Id.* at ——, 113 S.Ct. at 2815, 125 L.Ed.2d at 509.

Messrs. Justice Kennedy and Thomas and Mr. Chief Justice Rehnquist also concur in the judgment and agree with Mr. Justice Scalia that not all in rem forfeitures may have arisen on account of the owner's culpability. However, these justices express doubt as to whether forfeiture is constitutionally permitted when the owner is without fault and not negligent. Finally, they would reserve the question of whether in rem forfeitures always constitute a punishment of the owner.

consider in a determination that a forfeiture under this statute is or is not violative of the "excessive fines" provision of Article I, Section 13.

■ We agree with Mr. Justice Scalia that in determining whether a forfeiture is an excessive fine, and therefore disproportionate, the inquiry does not concern the value of the thing forfeited, but the relationship of the offense to the property which is forfeited. If the forfeited property was significantly used in the commission of the offense, the item may be forfeited regardless of its value.

■ Where the evidence is that the criminal incident on which the forfeiture is based is not part of a pattern of similar incidents, there is no "significant" relationship between the property sought to be forfeited and the offense. Otherwise, significant property interests might become forfeit based on an unusual and unaccustomed incident.

■ Further, the burden of establishing a relevant pattern of criminal conduct should fall on the Commonwealth. If the owners were required to establish that the offending conduct is not a pattern, they would be forced to prove a negative. Therefore, it shall be the Commonwealth's burden to establish by clear and convincing evidence that the criminal conduct in question is not a onetime occurrence, and the Commonwealth may meet this burden by utilizing circumstantial evidence.

■ Applying this standard to the case at bar, there is clear and convincing evidence that King was involved in an ongoing drug business for which he used his house as a base of operations. King admitted involvement in unlawful drug sales and was in the possession of large amounts of cash, drugs, and drug paraphernalia, all of which were found either in his house or his car. That is sufficient to establish a "significant" connection between the criminal conduct in question and the subject of the forfeiture, King's house. The forfeiture of King's house was not, therefore, an excessive fine under Article I, Section 13 of the Constitution of Pennsylvania.

Commonwealth Court's analysis of the Controlled Substances Forfeitures Act is quite sound: the statute provides no method except purchase at sale for anyone to obtain forfeited property. There is no statutory provision permitting redemption. Because we have determined that the forfeiture of King's house does not constitute an "excessive fine" under Article I, Section 13 of the Constitution of Pennsylvania, and because it is our view that Commonwealth Court was correct in its determination that redemption is not permitted in the context of this statutory forfeiture, the order of Commonwealth Court is affirmed.

Affirmed.

PAPADAKOS, J., concurs in the result.