# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 2132 C.D. 2014 |
| | : | Submitted: September 14, 2015 |
| Black 2009 Ford Mustang | : | |
| | : | |
| Re: Jon J. Keller, | : | |
| Appellant | : | |

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
HONORABLE MARY HANNAH LEAVITT, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION
BY JUDGE LEAVITT                                                    FILED: October 14, 2015

Jon J. Keller appeals an order of the Court of Common Pleas of York County (trial court) granting the Commonwealth of Pennsylvania's petition for forfeiture of Keller's 2009 Ford Mustang, which was seized in the course of a drug transaction with an undercover police officer. The trial court held that because the vehicle was used as collateral in the transaction, its forfeiture was authorized by the statute commonly known as the Controlled Substances Forfeiture Act (Forfeiture Act), 42 Pa. C.S. §§6801-6802. Keller challenges the forfeiture on the grounds that he used his vehicle as collateral only at the suggestion of the undercover officer, a defense Keller refers to as "forfeiture entrapment." We affirm.

The facts of this case are undisputed. Police Officers Adam Bruckhart and Travis Shearer are assigned to the York County Drug Task Force. A confidential informant advised Shearer that Keller was selling prescription drugs.

The two arranged to have Bruckhart go undercover to buy drugs from Keller while Shearer conducted surveillance.

On August 5, 2013, Bruckhart met the confidential informant in a parking lot in Penn Township, in York County. Keller arrived a few minutes later in his 2009 Ford Mustang. The confidential informant introduced Officer Bruckhart to Keller, who sold Bruckhart several knives and 59 prescription pills for $80. Some of the pills were in Keller's pocket and others were in the vehicle's passenger compartment.[1] Keller advised Bruckhart that he had cocaine available for sale, and the two exchanged telephone numbers. Keller drove away.

An hour later, Bruckhart called Keller about the cocaine. Keller instructed Bruckhart to meet him at another parking lot in Hanover Borough. Prior to Bruckhart's arrival, Shearer observed Keller sitting inside his Mustang in the parking lot. When Bruckhart arrived, Keller got into Bruckhart's vehicle. Keller asked Bruckhart if he was a police officer and searched both Bruckhart and his vehicle. Satisfied, Keller agreed to sell Bruckhart two "eight balls" of cocaine for a total of $400.[2] Keller told Bruckhart to give him $400 and wait there for the cocaine delivery. Bruckhart objected lest Keller take the cash and not return with the cocaine. Keller agreed to take $200 in cash and give Bruckhart the keys to his Mustang to secure his promise to return.

Keller got into a silver SUV and left.[3] Bruckhart waited in the parking lot. After some time passed, Bruckhart called Keller and threatened to take the Mustang if Keller did not return soon. Shortly thereafter, Keller returned to the

---

[1] Keller sold one Oxycodone pill, six Provigil pills and 52 Lorazepam pills.

[2] An eight ball is three and a half grams of cocaine.

[3] It is not clear from the record where the SUV came from or who was driving it.

parking lot on foot and was arrested. Keller no longer had the $200. He did have a small amount of cocaine, but not the two eight balls he had promised to secure. Police searched the Mustang and found various small knives and undescribed drug paraphernalia, but no drugs. Keller told police that he was supposed to report to jail later that day and that he was selling knives, pills and cocaine to tide him over while in jail.[4]

On December 5, 2013, the York County District Attorney's Office filed a petition for forfeiture of Keller's 2009 Ford Mustang.[5] On October 20, 2014, the trial court conducted a hearing at which the Commonwealth and Keller appeared. The Commonwealth presented the testimony of Officers Bruckhart and Shearer, who testified to the above recited events.[6] Keller did not testify.

At the conclusion of the hearing, the trial court ordered the forfeiture of the Mustang. The trial court reasoned that Keller's use of the vehicle to travel to the site of the drug transaction, by itself, did not make the vehicle forfeitable. Rather, it was the use of the Mustang as collateral that facilitated the cocaine drug transaction. The trial court explained its reasoning as follows:

---

[4] Keller was charged with, *inter alia*, possession with intent to deliver and ultimately entered a negotiated guilty plea to the criminal charges. He received a jail sentence of three years with an opportunity to pursue drug treatment in an inpatient treatment facility.

[5] The Commonwealth also sought forfeiture of $110 cash and a cell phone. Keller did not contest forfeiture of those items. The trial court ordered forfeiture of those items and Keller has not appealed that aspect of the trial court's order.

[6] The Commonwealth must prove by a preponderance of the evidence, which is a more likely than not standard, that there is a "sufficient or substantial nexus" between unlawful drug activity and the property sought to be forfeited. *Commonwealth v. $2,523.48 U.S. Currency*, 649 A.2d 658, 660 (Pa. 1994) (quoting *Commonwealth v. 502-504 Gordon Street*, 607 A.2d 839, 842 (Pa. Cmwlth. 1992)).

3

I agree [with Keller's counsel's argument that the vehicle should not be forfeited] except for one thing, the use of the vehicle for collateral. Providing that to the detective, allowing him the ability to attempt to deliver the drugs. Absent that fact it was testified to here today, it has not been controverted. I agree with [Keller's counsel]. Using a car to get to somewhere without more would be essentially like seizing someone's legs in this day and age. So, but under the circumstances and the fact that it was used to facilitate the drug transaction or the attempted drug transaction by providing the keys to the vehicle as collateral to allow [Keller to] then leave in order to get arguably the drugs, I think that's where [the argument against forfeiture] falls into a bit of a pitfall.

Notes of Testimony, October 20, 2014, at 27-28 (N.T. ___).

Keller appealed to this Court, raising three issues in his Pennsylvania Rule of Appellate Procedure 1925(b) statement: (1) the evidence did not show a substantial nexus between the use of the vehicle and the crime committed; (2) the vehicle was used as collateral at the insistence of the police, not Keller; and (3) giving the vehicle's keys to the undercover officer did not make the vehicle itself collateral. The trial court issued a Rule 1925(a) opinion rejecting Keller's arguments. The matter is now before this Court for our consideration.[7]

On appeal, Keller raises one issue for this Court's consideration, explaining that he is "proceed[ing] only on Issue #2 of the 1925(b) Statement." Keller's Brief at 4 n.1. Specifically, Keller argues that the trial court erred in

---

[7] In an appeal from a forfeiture proceeding, this Court reviews whether findings of fact made by the trial court are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law. *Commonwealth v. $11,600.00 Cash, U.S. Currency*, 858 A.2d 160, 163 n.3 (Pa. Cmwlth. 2004). Our scope of review over questions of law is plenary. *Commonwealth v. The Real Property and Improvements Commonly Known as 5444 Spruce Street,* 832 A.2d 396, 398 (Pa. 2003).

granting the forfeiture of his 2009 Ford Mustang that was used as collateral only at the insistence of law enforcement.[8]

The Forfeiture Act, 42 Pa. C.S. §§6801-6802, abolishes any property right in any property used to purchase or sell contraband drugs. Forfeitable property includes motor vehicles. The Forfeiture Act states, in relevant part, as follows:

> (a) Forfeitures generally.---The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:
>
> > (1) All drug paraphernalia, controlled substances or other drugs which have been manufactured, distributed, dispensed or acquired in violation of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act.[9]
> >
> > (2) All raw materials, products and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing or exporting any controlled substance or other drug in violation of The Controlled Substance, Drug, Device and Cosmetic Act.
>
> ***

---

[8] Despite the listing of only one issue in the statement of questions and argument sections of his brief, Keller also suggests at the end of his brief that the Mustang should not be forfeited because it was not directly involved in the drug transaction, only the car keys were. Keller argues that Officer Bruckhart had control over the car keys, but no legal interest that would have allowed him to dispose of the vehicle if Keller did not return. We reject this suggestion. The car keys, worthless by themselves, represented control of the vehicle. This is not the ordinary or legal way to effect a security interest in an automobile. The parties were engaged in an illegal transaction. It cannot be expected that the posting of collateral would conform to the Uniform Commercial Code.

[9] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-101 – 780-144.

(4) All conveyances, including aircraft, *vehicles* or vessels, which are *used or are intended* for use to transport, or *in any manner to facilitate* the transportation, sale, receipt, possession or concealment of, property described in paragraph (1) or (2), except that:

***

(ii) no conveyance shall be forfeited under the provisions of this section by reason of any act or omission established by the owner thereof to have been committed or omitted without his knowledge or consent, which absence of knowledge or consent must be reasonable under the circumstances presented[.]

42 Pa. C.S. §6801(a) (emphasis added). In sum, a vehicle can be forfeited if it has been used "in any manner to facilitate" the sale of illegal drugs. 42 Pa. C.S. §6801(a)(4). In *Commonwealth v. Wingait Farms,* 690 A.2d 222 (Pa. 1997), our Supreme Court upheld the forfeiture of thoroughbred horses that had been used as collateral in a large-scale marijuana operation.

Where the Commonwealth proves that a seized vehicle is forfeitable under Section 6801(a)(4), the burden shifts to the owner of the vehicle to establish an innocent owner defense, *i.e.*, that the vehicle's unlawful use was "without his knowledge or consent." 42 Pa. C.S. §6801(a)(4)(ii). If he cannot, the vehicle will be forfeited.

Keller argues that his use of his vehicle as collateral to facilitate the proposed drug deal should not result in a forfeiture because it was done at the insistence of Officer Bruckhart. It was not Keller's idea. Keller argues that by inducing him to use the vehicle as collateral, the police engaged in what amounts

6

to "forfeiture entrapment," akin to criminal entrapment where police use methods of persuasion that would ensnare an otherwise honest, law abiding citizen. *Commonwealth v. McGuire*, 488 A.2d 1144, 1148-49 (Pa. Super. 1985).

The Commonwealth responds that there was no entrapment. Nothing that Officer Bruckhart did or said created a risk that Keller, otherwise innocently disposed, was ensnared. Bruckhart's demand for collateral is what Keller could have expected of any purchaser of cocaine.[10]

Entrapment is a statutory defense to a criminal charge in Pennsylvania. Section 313 of the Crimes Code provides for the defense of entrapment. It states, in relevant part, as follows:

> (a) General rule.--A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:
>
> > (1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or
> >
> > (2) *employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it*.
>
> (b) Burden of Proof.--Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.

---

[10] The Commonwealth also argues that Keller's use of the vehicle to deliver prescription drugs to Bruckhart in the first drug transaction itself warrants a forfeiture. The trial court did not order forfeiture of the vehicle on that basis. Based on our disposition of Keller's appeal, we need not decide that question.

7

18 Pa. C.S. §313(a),(b) (emphasis added).

Keller pled guilty to possession of cocaine with intent to deliver. He did not raise an entrapment defense to his criminal charge. Keller's brief concedes that "the facts make it pretty apparent that Keller was ready to perform a drug transaction with Officer Bruckhart." Keller's Brief at 10. Rather, Keller asserts that it was not his choice to use his Mustang as collateral. Bruckhart forced the Mustang's bailment, which Keller considers a form of entrapment. But for Bruckhart's demand, the vehicle would not have been involved in the transaction.

A proceeding under the Forfeiture Act is a civil, *in rem* proceeding. *Strand v. Chester Police Department*, 687 A.2d 872, 873 n.2 (Pa. Cmwlth. 1997). The Forfeiture Act provides an innocent owner defense, not an entrapment defense. The Forfeiture Act nowhere states that the idea to use a vehicle to facilitate an illegal drug sale must originate with the drug dealer in order for the vehicle to be forfeitable.

The Commonwealth points out that even if entrapment were a defense under the Forfeiture Act, it would not help Keller in this particular case. The Pennsylvania Superior Court has explained the purpose behind an entrapment defense as follows:

> Section 313 [of the Crimes Code] adopts the "objective" approach to entrapment…. This view—the objective approach—conceives the entrapment defense as aimed at deterring police wrongdoing. *The defense provides a sanction for overzealous and reprehensible police behavior* comparable to the exclusionary rule. The focus of the defense is on what the police do and not on what kind of person the particular defendant is—whether he is innocent or predisposed to crime.

*Commonwealth v. Lucci*, 662 A.2d 1, 3 (Pa. Super. 1995) (emphasis added). If there is no dispute as to the operative facts relating to the defense, the court should

8

determine the question of entrapment as a matter of law. *Id*. at 3. Where police conduct "rises to the level of outrageousness, the conduct will support a finding of entrapment as a matter of law." *Commonwealth v. Zingarelli*, 839 A.2d 1064, 1073 (Pa. Super. 2003) (citing *Lucci*, 662 A.2d at 7).[11] Simply providing an opportunity to commit a crime that the defendant seizes is not entrapment; the police behavior must be "outrageous and egregious." *Zingarelli*, 839 A.2d at 1075.

Officer Bruckhart testified about using the Ford Mustang for collateral as follows:

> [Keller] asked me to provide him with $400.00 and he said he would return with the cocaine. I refused. And he agreed to take $200.00 and leave me with his car keys to that Mustang as collateral for the cocaine.
>
> My concern was that he would not return with any product and steal my money. So, we came to that agreement. I gave him $200.00 official funds. He gave me the car keys to the Mustang. I waited in the parking lot for some time. He did not return. For that reason we had several phone conversations.
>
> One conversation I remember he answered the phone and I told him that if he didn't return in a few minutes, I was taking his car. Eventually Mr. Keller did return and on his return he was arrested.

N.T. 6-7. In addition, Officer Bruckhart was examined as follows:

---

[11] Lucci was convicted of various drug crimes after selling cocaine to a paid police informant and two undercover agents. Two weeks after Lucci's release from a drug rehabilitation center, he was approached by the informant, who was Lucci's friend. The informant asked Lucci multiple times to secure drugs for him, appealing to the close friendship between the men and playing upon Lucci's sympathy by stating that the informant's mother was dying. The informant also offered Lucci a "free high" if he would secure the drugs despite the fact that Lucci was struggling to stay clean. The Superior Court vacated the convictions after concluding that Lucci had been entrapped as a matter of law through the egregious and outrageous conduct of the informant.

9

Q. Okay. All right. [Keller] wanted you to give him the full $400.00, right, and he said he had to take that somewhere to get the cocaine?

A. Correct.

Q. You would not agree to that?

A. Right.

Q. Were you afraid he was going to take off with the money?

A. Right.

Q. So, the agreement was you would give him half of it $200.00, right, and you would hang onto his car keys so he could not just take off.

A. Correct.

*\*\**

Q. Without the vehicle and the vehicle's keys, would there have been a second deal made at that time?

A. Had I not received collateral?

Q. Correct.

A. I would have required some type of collateral, a car, cellphone, or driver's license.

Q. In this case the collateral was the car?

A. Yes.

N.T. 13-15. Officer Bruckhart's conduct was neither outrageous nor egregious.

After closing the first drug sale, Keller proposed an upsale of cocaine. Keller chose the meeting place and chose to drive his Mustang there. Keller requested $400 in cash in exchange for a promise to deliver cocaine. Even assuming that entrapment can be a defense in any civil proceeding, it fails here

10

because nothing Officer Bruckhart did was outrageous. The problem was one of Keller's doing. Instead of leaving his keys with Bruckhart, Keller could have decided not to go forward with his proposed illegal drug transaction.

Accordingly, we affirm the order of the trial court.

_____
MARY HANNAH LEAVITT, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　　:　　No. 2132 C.D. 2014
　　　　　　　　　　　　　　　　　　:
Black 2009 Ford Mustang　　　　　　:
　　　　　　　　　　　　　　　　　　:
Re: Jon J. Keller,　　　　　　　　　　:
　　　　　　　　　　　Appellant　　　:

# **O R D E R**

AND NOW, this 14th day of October, 2015, the order of the Court of Common Pleas of York County dated October 20, 2014, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, Judge