IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
    :
    v.    :  No. 59 C.D. 2016
    :  Submitted:  June 10, 2016
Russell Teeter,    :
    Appellant    :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT[1]           FILED: October 31, 2017

Russell Teeter appeals, *pro se*, an order of the Court of Common Pleas of Schuylkill County (trial court) granting the Commonwealth's petition to forfeit his home under the act commonly known as the Controlled Substances Forfeiture Act (Forfeiture Act), 42 Pa. C.S. §§6801-6802,[2] after Teeter pled guilty to one count of possession with intent to deliver methamphetamine under the Controlled Substance, Drug, Device and Cosmetic Act (Drug Act).[3]  Because the

---

[1] This case was assigned to the authoring judge on February 3, 2017. This memorandum opinion is filed pursuant to Commonwealth Court Internal Operating Procedure §256(b), which states: "When there exists a vacancy or a recusal among the commissioned judges that results in an even number of commissioned judges voting on a circulating panel opinion or en banc opinion, and when the vote of all participating commissioned judges results in a tie, the opinion shall be filed as circulated. … Unless there is a majority vote of the participating commissioned judges to report, the opinion shall not be reported." 69 Pa. Code §256(b).

[2] Sections 6801 and 6802 of the Judicial Code were repealed by the Act of June 29, 2017, P.L. 247 (effective July 1, 2017), which substantially amended the Forfeiture Act. The Forfeiture Act is now codified at 42 Pa. C.S. §§5801-5808 (effective July 1, 2017).

[3] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-101 – 780-144.

Commonwealth's evidence did not prove that Teeter's home facilitated a violation of the Drug Act, we reverse.

In early March 2014, as part of its investigation of Teeter, the Minersville Police Department arranged for a confidential informant to meet Teeter at his home located at 42 Westwood Street, Minersville, Pennsylvania, to purchase methamphetamine. The confidential informant returned with a substance that field testing determined to be methamphetamine.

Based on this controlled buy, police obtained a search warrant. On March 6, 2014, Patrolman Jeffrey Bowers and other officers executed the warrant on Teeter's house where they recovered a small quantity of methamphetamine, drug paraphernalia and firearms. Teeter was charged with one count of possession with intent to deliver a controlled substance, four counts of illegal possession of firearms, one count of possession of a prohibited offensive weapon (relating to an automatic switchblade knife found in Teeter's home), two counts of possession of a controlled substance, and one count of possession of drug paraphernalia. Teeter pled guilty to all of the charges, except for three counts of illegal possession of firearms, and was sentenced on April 22, 2015, to a term of incarceration of five to ten years.[4] On June 29, 2015, the Commonwealth filed a petition for the forfeiture of Teeter's home.

On October 8, 2015, the trial court conducted a hearing, at which Teeter appeared *pro se*. In response to questioning by the trial court, Teeter explained that he requested representation by a public defender but believed the request was lost

---

[4] Specifically, Teeter was sentenced to 5 to 10 years on the count of person not to possess firearms. He received concurrent sentences on the remaining counts, including 2 to 4 years for possession with intent to deliver; 6 to 12 months for prohibited possession of offensive weapon; 3 to 6 months for each count of possession of a controlled substance; and 1 to 6 months for possession of drug paraphernalia.

because he was moved to a different state correctional institution after he made the request for counsel.[5]  The Commonwealth's sole witness was Patrolman Bowers, who has worked for 15 years as a police officer doing general patrol duties and serving as the police department's narcotics investigator.  The trial court granted the Commonwealth's motion to have Bowers qualified as "an expert able to render opinions in the field of drug law enforcement here in Schuylkill County."  Notes of Testimony, 10/18/2015, at 9 (N.T. ___).

Bowers testified that the police sent a confidential informant to Teeter's house to purchase methamphetamine from Teeter.  Bowers did not state whether the police checked the informant's person, either before or after the controlled buy.[6]  The informant did not testify.[7]  The following exchange then took place:

---

[5] Notably, under federal law an indigent home owner has a statutory right to counsel where his primary residence is subject to forfeiture.  *See* 18 U.S.C. §983(b)(2)(A) ("If a person with standing to contest the forfeiture of property in a judicial civil forfeiture proceeding under a civil forfeiture statute is financially unable to obtain representation by counsel, and the property subject to forfeiture is real property that is being used by the person as a primary residence, the court, at the request of the person, shall insure that the person is represented by an attorney for the Legal Services Corporation with respect to the claim.").

[6] *Cf. Commonwealth v. 1997 Chevrolet*, 106 A.3d 836, 858 (Pa. Cmwlth. 2014) (*1997 Chevrolet I*), *affirmed*, *Commonwealth v. 1997 Chevrolet and Contents Seized from Young*, 160 A.3d 153 (Pa. 2017) (*1997 Chevrolet II*).  As noted by this Court in *1997 Chevrolet I*, the record showed that police employ a standard procedure in conducting a controlled buy: officers search the informant to insure he has no drugs before meeting the suspect, give the informant marked bills, and send the informant to meet the suspect at a location under police surveillance.  *Id*. at 841.  The police officer who supervised the controlled buys in *1997 Chevrolet* testified that he and his partner followed the standard procedure by, *inter alia*, searching the informant for drugs before giving him the prerecorded buy money and dialing the suspected drug dealer's phone number.  *Id*.  After the transaction is complete, the informant turns over the controlled substance and any cash he received as change.  *Id.* at 843. Bowers' testimony did not show that the Minersville Police Department employed this standard procedure, which could have refuted Teeter's claim that he gave the drugs to the informant, whom he described as a friend.

[7] *Cf. Commonwealth v. Real Property and Improvements Commonly Known as 5444 Spruce Street*, 890 A.2d 35 (Pa. Cmwlth. 2006).  In *5444 Spruce Street*, a key witness for the Commonwealth

3

[The Court]: What was the sale price? Do you remember?

[Bowers]: No. I'm just trying to look through the notes here to see. I don't remember -- $450.

[The Court]: $450 for what?

[Bowers]: An 8-ball or one-eighth of an ounce.

N.T. 18.

Bowers stated that the following items were seized during the search of Teeter's house and his person: a blue container with four resealable glassine baggies of methamphetamine and two straws; one resealable baggie with methamphetamine residue; a bag of suspected marijuana from Teeter's pocket; a brown wallet with Teeter's identification and $238 in cash; four handguns; an automatic switchblade knife; two operable cell phones; drug paraphernalia, including a broken mirror with methamphetamine residue and a grinder; a lockbox with baseball cards and coins; a wooden box with inoperable cell phones and cell phone parts; and two electronic tablets. N.T. 12-17, 28. Bowers stated, in conclusory fashion, that one of the cell phones revealed conversations referring to the sale of methamphetamine and marijuana.[8]

When asked for his "expert opinion" on the "relationship between the controlled buy and the items found in the house," Teeter responded that "[i]n my opinion, the property has been used -- there's been previous cases and previous arrests and previous drug investigations that I've been a part of ... where we've made buys out of that house ...." N.T. 19-20. In support, Bowers pointed to "that list that

---

credibly testified that he purchased illegal drugs from either the defendant or her daughter at the subject property several times a week. *Id*. at 37.

[8] Presumably, the "conversations" were text messages. Copies of the text messages were not offered into evidence, and Bowers did not specify the content of these "conversations" or whether they contained references to drug trades at Teeter's house.

I gave you." *Id.* at 20. The "list" consisted of Teeter's arrest history and was marked as Commonwealth Exhibit No. 2. *Id.* Notably, that exhibit was never admitted into evidence. Bowers testified that Teeter was arrested once in 2007; twice charged with possession with intent to deliver a controlled substance in 2007; and once charged with possession of a controlled substance in 2013. Bowers noted that police had made controlled buys at Teeter's house, but he offered no evidence of their number, date or whether they were independent of a police initiative. Bowers did not explain how Teeter's house was implicated in any of Teeter's prior arrests, which were for possession of controlled substances and not their sale.

On cross-examination by Teeter, Bowers conceded that the officers who searched Teeter's home did not discover a scale or any drug packaging materials. He also conceded that the $238 seized from Teeter's wallet did not include any of the marked bills given to the informant two days earlier. Finally, Bowers conceded that the small quantity of methamphetamine found in the search, *i.e.*, four glassine baggies with straws, was consistent with personal use, not trafficking. Bowers did not say whether the "suspected" marijuana found in Teeter's pocket was tested.

Teeter testified that he is a drug addict, not a drug dealer, and that the contraband seized from his home was for his personal use. To that point, Teeter emphasized the failure of the police to find any marked currency of the $450 given the informant, drug scales, or significant quantities of controlled substances in his home. On cross-examination, Teeter acknowledged that he pled guilty to a charge of possession with intent to deliver in the instant case.

Upon questioning by the trial court, Teeter acknowledged that he was incarcerated in 2007 for possession with intent to deliver a controlled substance but

5

clarified that no illegal drug sales were "made out of the house. That's where I was residing. It was not made from that property." N.T. 31-32.

The trial court ruled from the bench in favor of the Commonwealth and granted the forfeiture petition. Teeter filed a notice of appeal to the Superior Court and a statement of errors complained of on appeal.[9] Thereafter, the trial court issued an opinion in support of its order. The trial court concluded that the Commonwealth had established "a clear nexus of [Teeter]'s use of [his house] as his base of operations for the sale of illegal drugs." Trial Court Op. at 5. In support, the trial court cited Patrolman Bowers' testimony about the March 2014 controlled buy; Bowers' expert opinion that "in recent years" Teeter's home had been used to facilitate the sale of illegal drugs; Teeter's guilty plea to possession with intent to deliver a controlled substance; and Teeter's prior criminal history, including convictions for possession with intent to deliver, as shown on Commonwealth Exhibit No. 2. On January 18, 2016, the Superior Court transferred the appeal to this Court.

---

[9] Teeter's notice of appeal was docketed on November 12, 2015, which was 34 days after the trial court filed its forfeiture order. The Superior Court issued a rule to show cause why the appeal should not be quashed as untimely under Pa. R.A.P. 903(a). In his response, Teeter explained that the trial court mailed the order to his last known street address instead of to the state correctional institution where he was incarcerated. As a result, he did not receive the order until November 10, 2015, which was one day after the 30-day appeal deadline had expired. Teeter promptly submitted his notice of appeal that same day. This timetable, which the Commonwealth has not disputed, sets forth a breakdown in the administrative process and basis for a *nunc pro tunc* appeal. Accordingly, we decline to quash Teeter's appeal.

6

On appeal,[10] Teeter argues that the trial court erred because the Commonwealth did not prove that his home facilitated illegal drug trafficking. We agree.

Former Section 6801 of the Forfeiture Act states as follows:

(a) The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

* * *

(6)(i) All of the following:

(A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device or Cosmetic Act, and all proceeds traceable to such an exchange.

(B) Money, negotiable instruments, securities or other things of value used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act.

(C) *Real property used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act*, including structures or other improvements thereon, and including any right, title and interest in the whole or any lot or tract of land and any appurtenances or improvements, which is used, or

---

[10] On review, this Court determines whether the trial court's factual findings are supported by substantial evidence, whether the trial court abused its discretion, or whether the trial court committed an error of law. *Commonwealth v. McJett*, 811 A.2d 104, 109 (Pa. Cmwlth. 2002).

7

> intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of The Controlled Substance, Drug, Device and Cosmetic Act, and things growing on, affixed to and found in the land.

42 Pa. C.S. §6801(a)(6)(i) (emphasis added).[11] Notably, the following subsection (ii) provides a rebuttable presumption that cash found "in close proximity to controlled substances" is presumed to be proceeds derived from the sale of controlled substances. 42 Pa. C.S. §6801(a)(6)(ii) (repealed). There is no such presumption for real property. Stated otherwise, drugs found in a house may be "in close proximity" to that house but that proximity does not raise an evidentiary presumption in favor of the Commonwealth.

This means that the Commonwealth must prove by a preponderance of evidence that the real property it seeks to condemn was used to facilitate violations of the Drug Act. *Commonwealth v. 502-504 Gordon Street*, 607 A.2d 839, 842 (Pa. Cmwlth. 1992).[12] We have observed that in the application of the term "facilitate,"

---

[11] As noted above, Section 6801 was repealed by the Act of June 29, 2017, P.L. 247 (effective July 1, 2017). The provisions of former Section 6801 are now found at 42 Pa. C.S. §5802.

[12] After the Commonwealth satisfies its initial burden, the property owner can assert an "innocent owner" defense under Section 6802(j) of the Forfeiture Act, 42 Pa. C.S. §6802(j) (repealed; see 42 Pa. C.S. §5805 for current provision). *Commonwealth v. Real Property and Improvements Known as 2314 Tasker Street*, 67 A.3d 202, 206 n.9 (Pa. Cmwlth. 2013). The property owner can also defend a forfeiture petition by demonstrating that the forfeiture of his property is so "grossly disproportional to the gravity of the offense" that it is an excessive fine under the Eighth Amendment. *Id*. at 206 n.10. When a civil *in rem* forfeiture is challenged under the Eighth Amendment, a court must assess, *inter alia*, whether the property was the "instrumentality" of the drug offense. *1997 Chevrolet II*, 160 A.3d at 191.

Teeter did not raise an innocent owner defense. Teeter raised the Eighth Amendment in his brief to this Court, but the issue was not preserved. The trial court granted the forfeiture with a ruling from the bench, and Teeter appealed. However, Teeter did not raise an Eighth Amendment challenge to the trial court's decision in his post-trial Rule 1925(b) statement.

Pennsylvania courts require that the Commonwealth show a sufficient or substantial nexus between the property and the prohibited activity "to mitigate the potentially harsh results of permitting the Commonwealth to penalize a citizen by a civil action against his property rather than a criminal action against his person."

*Id.* (quoting *Commonwealth v. One 1985 Dark Blue Mercedes Benz Car*, 571 A.2d 482, 485 (Pa. Super.), *appeal denied*, 586 A.2d 922 (Pa. 1990)).

"Substantial nexus" is not a statutory standard. Rather, it describes the quality and quantity of evidence needed to prove that property has "facilitated" a violation of the Drug Act. We are also mindful that the terms of the Forfeiture Act must be strictly construed because forfeiture is not favored in the law. *United States v. One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. 219, 226 (1939). Just recently, this Court observed:

> The purpose of forfeiture is to make unavailable "the instrumentalities used to facilitate criminal activity and thus attempts to prevent future criminal activity." Barclay Thomas Johnson, *Restoring Civility—the Civil Asset Forfeiture Reform Act of 2000: Baby Steps Towards a More Civilized Civil Forfeiture System*, 35 IND. L. REV. 1045, 1068 (2001–2002). Where the property to be forfeited is a home, forfeiture is not readily granted. As explained in *United States v. Certain Lots in City of Virginia Beach, Virginia*, 657 F.Supp. 1062, 1065 (E.D.Va.1987),
>
>> courts have traditionally drawn a distinction between one's personal property and one's home, according the latter far greater protection under the law.
>
> Indeed, this Court has observed that it "is difficult to imagine a more punitive result than the forfeiture of one's home and personal residence[.]" *Commonwealth v. Real Property and Improvements at 2338 N. Beechwood Street*, 65 A.3d 1055, 1065 (Pa. Cmwlth. 2013).

*1997 Chevrolet I*, 106 A.3d at 859 (footnote omitted).

Pennsylvania's jurisprudence is bereft of a specific definition of the word "facilitate" as used in the Forfeiture Act. Rather, our jurisprudence has focused on the evidentiary requirement that there must be a substantial nexus between the property sought to be forfeited and the drug violation. *See, e.g., 502-504 Gordon Street*, 607 A.2d at 842. However, the forfeiture of any property must have a specific statutory basis, *i.e.*, that the forfeitable property is a "thing of value" used to purchase illegal drugs or represents the "proceeds traceable to such an exchange." 42 Pa. C.S. §6801(a)(6)(i)(A) (repealed). In short, "substantial nexus" is not a definition of "facilitate."

"Facilitate" is used in the federal statute, which Pennsylvania's Forfeiture Act mirrors. *See, e.g.,* 21 U.S.C. §881(a)(7). Federal courts have defined "facilitate" to mean that the forfeitable property must be an instrumentality of the drug offense and bear more than "an incidental or fortuitous connection" to the offense. *United States v. Certain Lots in the City of Virginia Beach, Virginia*, 657 F.Supp. 1062, 1065 (E.D. Va. 1987). Federal courts have also applied "facilitate" to require a house subject to forfeiture to be "an integral part of a drug operation." *United States v. Twelve Thousand Five Hundred Eighty-Five and no/100ths Dollars ($12,585.00) in U.S. Currency*, 669 F.Supp. 939, 943 (D. Minn. 1987), *reversed in part on other grounds by United States v. Premises Known as 3639-2nd Street, N.E., Minneapolis, Minnesota*, 869 F.2d 1093 (8th Cir. 1989). Given the charge to construe strictly the words of the Forfeiture Act and the heightened concern where the forfeiture of a personal residence is concerned, we hold that the term "facilitate" means that the Commonwealth must show that the house to be forfeited is the instrumentality of the offense. This aligns the statutory definition with the

10

constitutional requirement that a civil forfeiture cannot result in an excessive fine. *See, e.g., 1997 Chevrolet II*, 160 A.3d 153, 191 (if property is not found to be an instrumentality of criminal conduct, forfeiture is unconstitutional).[13]

Our interpretation of "facilitate" is supported by the Supreme Court's recent decision in *1997 Chevrolet II*, 160 A.3d 153. Although that case was decided under the Excessive Fines Clause of the Eighth Amendment, it informs our analysis. A unanimous Supreme Court curtailed the Commonwealth's use of forfeiture where "the security and privacy of the home and those who take shelter within it" are at stake. *Id.* at 177 (quoting *United States v. James Daniel Good Real Property*, 510 U.S. 43, 61 (1993)).[14] The Court explained that *in rem* forfeitures, unlike *in personam* forfeitures, do not depend upon a criminal prosecution, proceed against the property itself and, traditionally, serve primarily remedial rather than punitive ends, regardless of the impact on the property owner. *Id.* at 179. The foundation of civil *in rem* forfeiture actions is the legal fiction that the action is directed against "guilty property" rather than against the offender himself. *Id.* Thus, the Court observed, "because it was the 'guilty' property itself that was the sole focus of the malfeasance, historically, *in rem* forfeitures were limited to the instrumentalities of the underlying offenses, as the property was 'subject to forfeiture because it was the actual means by which an offense was committed.'" *Id.* at 180 (quoting *United States v. Bajakajian*, 524 U.S. 321, 333 n.8 (1998)). The Court stated, further, that

[13] If forfeited property is found to be an instrumentality of the underlying criminal conduct, a reviewing court must then assess whether the value of the property is grossly disproportional to the gravity of the offense; if it is, the forfeiture is unconstitutional. *1997 Chevrolet II*, 160 A.3d at 191.

[14] Recent amendments to the Forfeiture Act have also heightened the Commonwealth's burden of proof in a forfeiture proceeding. The Commonwealth must now "establish *by clear and convincing evidence* that the property in question was unlawfully used, possessed or otherwise subject to the forfeiture." 42 Pa. C.S. §5805(j)(3) (emphasis added).

11

where property was "significantly used in the commission of the offense," it is forfeitable regardless of its value, but "[w]here the evidence is that the criminal incident on which the forfeiture is based is not part of a pattern of similar incidents, there is no 'significant' relationship between the property sought to be forfeited and the offense." *Id*. at 183 (quoting *In re King Properties*, 635 A.2d 128, 133 (Pa. 1993)).

Important to our analysis in the instant case, the Supreme Court did not restrict the "significant relationship" requirement to an Eighth Amendment defense:

Rather than purely a constitutional threshold, we note that the "significant relationship" requirement is also a vestige of our Court's interpretation of the Forfeiture Act's requirement that the property be used or intended to be used to "facilitate" any violation of the Controlled Substance Act. 42 Pa.C.S. § 6801(a)(6). *Commonwealth v. 502–504 Gordon Street*, 147 Pa.Cmwlth. 330, 607 A.2d 839, 842 (1992) ("In interpreting the term "facilitate," Pennsylvania courts require that the Commonwealth show a sufficient or substantial nexus between the property and the prohibited activity 'to mitigate the potentially harsh results of permitting the Commonwealth to penalize a citizen by a civil action against his property rather than a criminal action against his person.'" (citations omitted)). Thus, the required nexus between the property and the underlying crime has both a constitutional dimension, as well as a statutory one under the Forfeiture Act.

*Id*. at 183 n.23. In short, it is the "significant relationship" to criminal conduct that "taints" the property and renders it "guilty," such that it becomes subject to *in rem* forfeiture.

For sure, using a home as a "base of operations" for an illegal drug enterprise meets the definition of "facilitate." *See, e.g., Commonwealth v. Wingait Farms*, 690 A.2d 222, 223, n.2 (Pa. 1997) (horse farm operated in part with drug proceeds and used to store, package and distribute large quantities of marijuana met

12

the "facilitate" test); *King Properties*, 635 A.2d at 133 (holding that house purchased with cash by laid-off blacktopping worker and used to store large amounts of cash, drugs, and drug paraphernalia functioned as base of operations for drug business). That a base of operations has a significant relationship to a drug enterprise is obvious. It takes significant evidence, however, to show that real property serves as a "base of operations" for an illegal drug enterprise.

Here, the trial court declaimed Teeter's home to be a base of operations for the sale of illegal drugs. In support, the trial court cited evidence of (1) Teeter's sale of an eighth of an ounce of methamphetamine to a confidential informant and (2) "prior episodes and sales out of [the] property … while [Teeter], as a tenant, had control of the property prior to [Teeter] receiving ownership from [his] parents." N.T. 34. In its Rule 1925(a) opinion, the trial court further explained that it relied upon Patrolman Bowers' expert opinion that Teeter's house facilitated violations of the Drug Act.

With respect to the "prior episodes and sales" cited by the trial court, the Commonwealth introduced Teeter's criminal history, and it was marked for identification as Commonwealth Exhibit No. 2. N.T. 20. That exhibit was never admitted into evidence[15] and is not part of the certified record. This is problematic because the Commonwealth's sole witness, Patrolman Bowers, relied exclusively on Exhibit No. 2 when he testified that

> there's been previous cases and previous arrests and previous drug investigations that I've been a part of in the previous years where we've made buys out of that house that resulted in Mr. Teter's [sic] arrest also. Through a pattern that I observed, the

---

[15] *See* N.T. 2 (Index to Transcript), which identifies Commonwealth's Exhibit No. 2 as "a criminal history" and where in the transcript it was marked. There is no page reference for the admission of Exhibit No. 2.

> house is used for trafficking narcotics and has been for years. There's previous cases dating back to 2007 and/or 2008. It's on the list that I gave you.

N.T. 19-20. Bowers' testimony about "the list" of offenses on Exhibit No. 2 was elliptical at best and did not include an arrest for drug sales but, at worst, possession with intent to deliver. His testimony did not state that Teeter was arrested or convicted of selling drugs. Likewise, Bowers did not explain the nature or extent of his involvement in any of the "previous cases" dating to 2007. Nor did Bowers explain when and how Teeter's home was connected to any of those prior criminal offenses.[16] Absent Exhibit No. 2 and testimony specifying how the house was implicated in the prior charges, the trial court's statement that Teeter's home was the site of "prior episodes and sales" of narcotics lacks a foundation in the record.

Bowers' conclusory opinion that Teeter's home facilitated violations of the Drug Act is irrelevant. An opinion on the ultimate question to be decided by the

---

[16] According to the trial court, Exhibit No. 2 identified four prior charges. N.T. 25. Bowers stated that "[e]ach date and the charges associated with the date are relative to … charges [that] stemmed from investigations that took place at 42 Westwood Street which is the residence in question." N.T. 21. Bowers testified about cases in the report from 2013 and 2014, which the Commonwealth's attorney described as "cases that you handled." N.T. 23. Bowers conceded that the 2013 case resulted in a possession of marijuana charge. N.T. 24. The 2014 case is the one underlying the instant forfeiture petition and cannot count as a "prior episode." The trial court asked Bowers whether the four prior charges on Exhibit No. 2 "were all for possession and not for possession with the intent to deliver or delivery?" N.T. 25. Bowers responded that the first three matters, which occurred in 2007 and 2009, were for possession with intent to deliver; the only one for possession was in 2013. *Id.* When asked how he knew Teeter was the defendant in the prior cases, Bowers cited his "comparison with his criminal history and the dates" and testified that he was part of the drug task force in the May 2009 case. N.T. 26.

On cross-examination, Teeter asked Bowers about one of the prior offenses in 2009, where, according to Bowers, Teeter was charged with possession and manufacture of a controlled substance. N.T. 28. Trafficking does not encompass manufacturing a controlled substance for personal use. There was no testimony linking the possession and manufacture charge to the house now subject to forfeiture.

14

trier of fact has no place in a civil trial. *See Kozak v. Struth,* 531 A.2d 420 (Pa. 1987). Bowers did not offer factual evidence of when, how and why Teeter's home facilitated Teeter's violations of the Drug Act. Bowers offered no specifics whatsoever in this regard. That Teeter had a roof over his head during the period he possessed drugs, for some purpose, does not mean that his house facilitated his Drug Act violations.

This leaves the single drug transaction in March 2014 that preceded the instant forfeiture petition. Teeter's home was, at most, incidental to that offense. A single transaction in Teeter's home is a far cry from, for example, the neighborhood crack house that functioned as a retail store for the purchase of controlled substances and, thus, was forfeited in *Commonwealth v. Real Property and Improvements Commonly Known as 5444 Spruce Street*, 890 A.2d 35, 37 (Pa. Cmwlth. 2006) (Commonwealth's chief witness testified that he purchased illegal drugs at the property several times a week over a long period of time).

In short, the trial court's statement that Teeter's home was the base of operations for illegal drug sales does not make it so. There must be concrete evidence establishing the necessary significant relationship between the home and drug sales. Bowers' expert opinion was not a substitute for factual evidence. Teeter notes in his brief, and the Commonwealth does not dispute, that it was the informant, a friend of Teeter's, who insisted that they meet at his house. A controlled buy where the police choose the house as the place for the drug transaction has little probative value in the subsequent forfeiture of that house.[17] The result may be different where

---

[17] The *1997 Chevrolet* case presented a similar issue. There, the petitioner's son was convicted of dealing drugs from her house, which was the subject of the Commonwealth's forfeiture petition. In reversing the forfeiture, this Court directed the trial court on remand to consider to what extent the son's "pattern of misbehavior" was a construct of the police department's narcotics field unit,

the suspected dealer chooses the house as the location for the transaction. The question that should have been answered in this forfeiture proceeding is whether Teeter's house would have been the subject of a forfeiture had the police directed that the controlled buy take place elsewhere. A house can function as the "base of operations" even though no sales take place there. *See, e.g., Wingait Farms*, 690 A.2d 222 (real property functioned as warehouse and business center for marijuana distribution operation).

We understand that police officers need to choose the location of a controlled buy so that they can observe their informant. However, where the Commonwealth has initiated the illegal drug transaction, it cannot be automatically inferred that the house chosen for the transaction has facilitated the offense, as opposed to facilitating the sting operation. The controlled buy at Teeter's house enabled police to obtain a search warrant. Had the search discovered a phone bank for taking orders for controlled substances, a methamphetamine manufacturing lab in the basement or a marijuana farm in the backyard, this would be a different case. Such a discovery would establish that the property functioned as the proverbial "base of operations." *Cf., Wingait Farms*, 690 A.2d at 223, n.2; *King Properties*, 635 A.2d at 133.

Forfeiture of real property on the ground that it has "facilitated" a violation of the Drug Act requires more than an incidental relationship to the drug activity. There must be a significant causal relationship so that the forfeiture will prevent a repeat of the drug offense. Teeter is an admitted drug addict. Taking

---

which chose to send its informant to the house instead of to another location for the controlled buys. *1997 Chevrolet I*, 106 A.3d at 863. We also observed that the police officers directed their informant to make contact with the suspect at times their surveillance determined he was at the house. We cautioned the trial court to consider whether the house would have been the subject of a forfeiture petition had the controlled buys been staged elsewhere.

Teeter's home will not impede his ability to possess, use or deliver drugs, which, by his own admission, he did at locations other than his home.

Real property that has facilitated violations of the Drug Act is subject to forfeiture. This is the law of Pennsylvania. However, it is a serious matter to confiscate any citizen's personal residence, as this Court and our Supreme Court have acknowledged on more than one occasion. It is serious enough that Congress requires that the homeowner be represented by counsel in a federal civil forfeiture. 18 U.S.C. §983(b)(2)(A).[18] The Commonwealth's evidence must be factual and show a causal, not a merely incidental, relationship between the house and the violations of the Drug Act. Patrolman Bowers' conclusory opinion was not a substitute for this necessary evidence. Nor did Bowers' incomplete narrative, drawn not from memory or experience but from an exhibit not admitted into evidence, suffice.

For these reasons, we reverse the trial court's order forfeiting Teeter's home to the Commonwealth.

_____
MARY HANNAH LEAVITT, President Judge

---

[18] *See* n. 5, *supra*.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania       :
                                   :
                v.                 :  No. 59 C.D. 2016
                                   :
Russell Teeter,                    :
                Appellant          :

# **O R D E R**

AND NOW, this 31st day of October, 2017, the order of the Court of Common Pleas of Schuylkill County in the above-captioned matter dated October 8, 2015, is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania         :
                                     :    No.  59 C.D. 2016
                v.                   :
                                     :    Submitted:  June 10, 2016
Russell Teeter,                      :
                     Appellant       :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


***OPINION NOT REPORTED***

DISSENTING OPINION
BY JUDGE McCULLOUGH                         FILED:  October 31, 2017


I respectfully dissent as I believe the record in this case contains sufficient evidence establishing that Russell Teeter utilized his home to facilitate a violation of the Controlled Substance, Drug, Device and Cosmetic Act (Drug Act),[1] such that the Court of Common Pleas of Schuylkill County (trial court) did not err in granting the Commonwealth's forfeiture petition.

Section 6801 of what is commonly referred to as the Controlled Substances Forfeiture Act (Forfeiture Act) provides, in relevant part, as follows:

> **(a) Forfeitures generally**.--The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

---

[1] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-101 – 780-144.

\* \* \*

(5) (i) All of the following:

\* \* \*

> (c) Real property used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act, including structures or other improvements thereon, and including any right, title and interest in the whole or any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of The Controlled Substance, Drug, Device and Cosmetic Act, and things growing on, affixed to and found in the land.

42 Pa.C.S. §6801(a)(5)(i)(c).

As the Majority recognized, the term "facilitate" is not defined in the Forfeiture Act or in the course of Pennsylvania's jurisprudence. Further, in applying the term "facilitate," the Majority aptly notes that:

> Pennsylvania courts require that the Commonwealth show a sufficient or substantial nexus between the property and prohibited activity 'to mitigate the potentially harsh results of permitting the Commonwealth to penalize a citizen by a civil action against his property rather than a criminal action against his person.'

(Slip op. at 8-9) (citing *Commonwealth v. 502-504 Gordon Street*, 607 A.2d 839, 842 (Pa. Cmwlth. 1992) (quoting *Commonwealth v. One 1985 Dark Blue Mercedes Benz Car*, 571 A.2d 482, 485 (Pa. Super.), *appeal denied*, 586 A.2d 922 (Pa. 1990)).

However, I disagree with the Majority insofar as it extends this applicability to hold "that the term 'facilitate' means that the Commonwealth must

show that the house is the instrumentality of the offense." (Slip op. at 10.) The Majority relies on Federal law and several Federal court decisions in support of this holding. The Majority recognizes that the language of our Forfeiture Act mirrors the language of the Federal forfeiture statutes, namely 21 U.S.C. §887(a)(7), which subjects to forfeiture

> All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment.

The Majority then cites *United States v. Certain Lots in the City of Virginia Beach, Virginia*, 657 F.Supp. 1062 (E.D. Va. 1987), to support the definition of "facilitate" as meaning instrumentality of the crime. However, in that case, the Federal court did not reach such a holding, but instead utilized a substantial nexus analysis. Indeed, in applying 21 U.S.C. §887(a)(7), the Federal court held that "real property may be subject to forfeiture . . . only where there is a substantial connection between the property and the underlying illegal transaction." *Id.* at 1065. In fact, the Federal court makes no reference to the term "instrumentality" in its decision.

Moreover, this Court recently explained that the terms "facilitate" and "instrumentality" are two different concepts for purposes of forfeiture, with the former used in conjunction with the substantial nexus test to determine whether forfeiture is warranted pursuant to a statute, and the latter used exclusively to determine whether a proposed forfeiture would be violative of the Eighth Amendment's excessive fines clause, U.S. CONST. amend. VIII. *See Commonwealth v. 1997 Chevrolet*, 106 A.3d 836, 864 n.34 (Pa. Cmwlth. 2014) (en banc), *aff'd*, ___

A.3d ___ (Pa., Nos. 29 and 30 EAP 2015, filed May 25, 2017) ("Whether property 'facilitates' a violation of the Drug Act, is a statutory inquiry and not the same as the constitutional inquiry into instrumentality.").

Turning to the evidence supporting the forfeiture in this case, I disagree with the Majority's characterization of Teeter's home being, "at most, incidental" to Teeter's offense. (Slip op. at 15.) The record in this case reveals that Teeter pled guilty to multiple drug charges, including possession with intent to deliver a controlled substance, two counts of possession of a controlled substance, and one count of possession of drug paraphernalia. (Forfeiture Petition, Exhibit D, Trial Court Sentencing Order.) Following receipt of information regarding a confidential source's purchase of methamphetamines from Teeter at Teeter's home, the local police department discovered that Teeter had numerous convictions for drug offenses dating back to 1994. (Forfeiture Petition, Exhibit A, Application for Search Warrant.)

The local police department subsequently arranged for the confidential source to make a controlled purchase of methamphetamines from Teeter at the home. (N.T., 10/8/15, p. 10.) The confidential source executed the purchase and returned with a quantity of suspected methamphetamine. *Id.* The suspected methamphetamine was field tested and returned a positive result. (Forfeiture Petition, Exhibit A, Application for Search Warrant.) Within 48 hours of the controlled purchase, the local police department obtained and executed a search warrant at the Property. (N.T., 10/8/15, p. 10.) During the execution of the warrant, the Police recovered a blue container,[2] containing four individually wrapped packets

---

[2] The confidential informant advised that during the controlled buy, Teeter retrieved the drugs from a blue container. (N.T., 10/8/15, p. 19.)

of methamphetamine, a medium-sized glassine baggie containing marijuana, several handguns, several cell phones, and a brown wallet containing $100.00 in currency, which was identified as the currency used in the controlled purchase of methamphetamine. (N.T., 10/8/15, pp. 11-14.)

At a hearing before the trial court, Patrolman Jeffrey Bowers testified as to the events leading up to the execution of the search warrant as described above as well as his familiarity with Teeter as the result of previous drug investigations. (N.T., 10/8/15, pp. 9-20.) Patrolman Bowers stated that there had been previous investigations, cases, and arrests related to drug activity at the Property dating as far back as 2007 and/or 2008 and opined that the Property was being used for trafficking narcotics. (N.T., 10/8/15, p. 20.) More specifically, Patrolman Bowers noted that Teeter had been arrested in 2007 and twice in 2009 and charged with possession with intent to deliver a controlled substance, and was arrested again in 2013 on a charge of possession of a controlled substance. (N.T., 10/8/15, p. 25.)

Regarding the latest search of Teeter's home, Patrolman Bowers indicated that a cell phone recovered during this search revealed several conversations relating to the sale/purchase of controlled substances, including methamphetamine and marijuana. (N.T., 10/8/15, p. 12.) Additionally, Patrolman Bowers noted the search discovered prepackaged methamphetamine consistent with what was purchased during the controlled buy two days earlier. (N.T., 10/8/15, p. 14.) Patrolman Bowers later reiterated his opinion that the Property was being continually used by Teeter as a source of trafficking of methamphetamine. (N.T., 10/8/15, pp. 26-29.) The trial court credited the testimony of Patrolman Bowers.

The significance of the Commonwealth seeking the forfeiture of a person's home is not taken lightly. Indeed, this area of the law has been subject to

high levels of scrutiny recently by both the Legislature and the courts of this Commonwealth. This Court, in deciding there is no common law right to forfeit property, recognized there must be a statutory basis to do so. *See Commonwealth v. Irland*, 153 A.3d 469, 486 (Pa. Cmwlth. 2017) ("Absent a statute that specifically authorizes the forfeiture of property, the Commonwealth had no authority to seek, and the trial court had no authority to order, forfeiture of Irland's property.")[3]

In this case, there is indeed a statutory basis and the evidence presented by the Commonwealth discussed above, which established that Teeter used his home to sell drugs, was sufficient to meet its burden of establishing a substantial nexus between Teeter's home and the prohibited activity. Thus, I would affirm the trial court's order granting the Commonwealth's forfeiture petition.

_____
PATRICIA A. McCULLOUGH, Judge

---

[3] Additionally, in *Commonwealth of Pennsylvania v. 1997 Chevrolet* and *Commonwealth of Pennsylvania v. The Real Property and Improvements Known as 416 S. 62nd Street*, ___ A.3d ___ (Pa., Nos. 29 and 30 EAP 2015, filed May 25, 2017), our Supreme Court addressed the constitutional limitations on civil *in rem* forfeiture under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. U.S. CONST. amend. VIII. Ultimately, the Supreme Court set forth a two-part test, first determining whether the property sought to be forfeited is an instrumentality of the underlying offense, and, if so, assessing whether the value of the property sought to be forfeited is grossly disproportional to the gravity of the underlying offense. However, as the Majority recognizes, while Teeter attempted to raise an Eighth Amendment issue in his brief to this Court, he did not raise this issue during the hearing before the trial court or in his Pa.R.A.P. 1925 statement of errors complained of on appeal. Thus, this issue was not properly preserved for purposes of our appellate review.